ROBERT L. MOSCARDINI, Plaintiff-Appellant, v. THE COUNTY OFFI-
CERS ELECTORAL BOARD OF DU PAGE COUNTY *et al.*, Defendants-
Appellees.

Second District    No. 2—92—0174

Opinion filed March 3, 1992.

WOODWARD, J., dissenting.

James Bryan Sullivan, of Oak Brook, for appellant.

Thomas C. Kellegan, of Wheaton, and Patrick K. Bond and Mary E. Dickson, both of Schirott & Hervas, P.C., of Itasca, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Robert Moscardini, appeals from a judgment of the circuit court of Du Page County in an action for judicial review of a decision of the County Officers Electoral Board of Du Page County (Board). The circuit court upheld the Board's decision removing Moscardini's name from the March 17, 1992, primary ballot for the office of Republican precinct committeeman for precinct 69 of York Township in Du Page County. Moscardini argues on appeal that the Board's decision must be reversed because it was against the manifest weight of the evidence, it was reached during closed deliberations in violation of the Open Meetings Act (Ill. Rev. Stat. 1989, ch. 102, par. 41 *et seq.*), and it results in illegal discrimination against disabled people who circulate nominating petitions. We reverse and order the Board to place plaintiff's name on the primary ballot.

Plaintiff submitted a nominating petition for the above office to the Board. The petition contained six sheets with a total of 75 signatures. Plaintiff's wife, Geraldine, signed an affidavit at the bottom of each sheet which stated that each of the signatures was placed on the sheet in her presence, that the signatures are genuine and, to the best of her belief, the persons who signed the sheet were registered voters whose addresses were correctly set forth therein.

Defendant, Mary Guardalabene, filed objections to plaintiff's petition with the Board. The objection at issue here is that Geraldine Moscardini did not actually circulate the petition even though she signed the affidavit at the bottom of all six sheets. At the Board's hearing on the objections, Guardalabene submitted affidavits from six individuals. Each of these affiants had signed a different sheet of plaintiff's petition. Each affidavit states that the affiant did not sign plaintiff's petition "in the presence of Geraldine C. Moscardini."

At the same hearing plaintiff submitted an affidavit from Geraldine Moscardini which states as follows. Geraldine saw all of the signatories actually place their signatures on her husband's petition. She was never more than 20 feet away from any of them at the time

they signed the petition. Geraldine did not walk up to the front door of each voter's residence with the petition because she has a degenerative bone disease which makes walking painful. Her son accompanied her and took the petition to some of the voters at their front doors; her husband did so with other voters; and a woman named Joyce Krempasky did so with others. At the hearing plaintiff submitted affidavits from each of these individuals which corroborated the statements in Geraldine's affidavit.

Plaintiff's counsel argued at the hearing that although Geraldine did not carry the clipboard containing the petition and personally solicit each individual who signed the petition, she was present at the time of each signature within the meaning of section 7—10 of the Election Code (Code) (Ill. Rev. Stat. 1989, ch. 46, par. 7—10). In a written decision dated January 9, 1992, however, the Board concluded that plaintiff's petition did not comply with section 7—10. The Board ruled that plaintiff's name would not be placed on the primary ballot. Plaintiff sought judicial review of the Board's ruling in the circuit court of Du Page County which upheld the decision in an order dated February 5, 1992. Plaintiff now appeals.

■ Section 7—10 of the Code (Ill. Rev. Stat. 1989, ch. 46, par. 7—10) states that at the bottom of each sheet of a nominating petition there must be a statement signed by a registered voter from the political subdivision in which the candidate seeks election. In this statement the affiant must certify "that the signatures on that sheet of the petition were signed in his presence, *** that the signatures on the sheet are genuine, and *** to the best of his knowledge and belief the persons so signing were at the time of the signing qualified voters of the political party for which a nomination is sought." (Ill. Rev. Stat. 1989, ch. 46, par. 7—10.) This portion of section 7—10 of the Code has been strictly enforced by courts because the requirements contained therein are important safeguards against fraud in the nominating process. *Fortas v. Dixon* (1984), 122 Ill. App. 3d 697, 700.

The Board made no finding in its written decision that Geraldine Moscardini was not present when any of the signatures were placed on her husband's petition. The Board stated in the decision that it had considered the affidavits submitted by plaintiff and Guardalabene. In paragraph two of the decision it stated that it had also considered "statements and admissions by the candidate's counsel that the actual circulator was not Geraldine Moscardini, who was described by the affiants in the counter-affidavits submitted in her behalf as being physically unable to present the petition to voters." In the next paragraph the Board concluded that plaintiff had "not complied with section 7—

10 of the Election Code requiring the circulator to swear that the signatures on the petition sheet were signed in her presence."

█ The only "admission" of the candidate's counsel to which the Board could have been referring was an admission that Geraldine did not physically hand the clipboard containing the petition to each voter who signed the petition. The Board's decision therefore appears to be premised upon a belief that the person who signs the so-called circulator's affidavit at the bottom of each sheet of a nominating petition must be the person who physically presented the sheet to each voter who signed it. Section 7—10 of the Code contains no such requirement. Instead the only requirement of that provision which is relevant to the objection we are considering here is that the person who signs the circulator's affidavit must have been present when each signatory signed the sheet.

It has been held that the witnessing of a will was done "in decedent's presence" when the decedent, who was 12 to 15 feet away, had ample opportunity to see the witness sign the attestation clause. (*In re Estate of Guinane* (1965), 65 Ill. App. 2d 193, 198.) If Geraldine's affidavit is true, she not only had ample opportunity to see each of the signatories sign her husband's petition, since she was standing no more than 20 feet away from any of them when they did so, but she also actually did see each of these individuals sign the petition. Therefore, under *Estate of Guinane*, the signatures were placed on the petition in Geraldine's presence if her affidavit and the supporting affidavits are true.

We recognize that in *Huskey v. Municipal Officers Electoral Board* (1987), 156 Ill. App. 3d 201, the court stated that section 7—10 was violated when the circulator allowed persons to sign the names of family members who were not present "and when someone other than the affiant actually presented the petition to signers." (*Huskey*, 156 Ill. App. 3d at 204.) In *Huskey*, however, the affiant who signed the circulator's affidavit at the bottom of each sheet admitted that some of the names on the petition were not signed in her presence. (156 Ill. App. 3d 201.) Therefore we do not interpret *Huskey* as requiring that the person who signs the circulator's affidavit be the person who physically presented the sheet to each signatory.

█ To the extent that *Huskey* does impose such a requirement we decline to follow it. The purpose of the portion of section 7—10 that we are considering is to prevent the filing of nominating petitions with fraudulent signatures. (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 536.) Reading into section 7—10 of the Code a requirement that the person who signs the circulator's affidavit be the one

who physically presented the sheet to each signatory would do nothing to serve this purpose. The Board's apparent conclusion that such a requirement exists is erroneous as a matter of law, and its decision must therefore be reversed. If Geraldine actually saw each of the signatories sign the petition, there was no violation of section 7—10 even if she did not physically present the petition to some of them.

Even if the Board relied upon the six affidavits from petition signers who stated that they did not sign in the presence of Geraldine Moscardini, its decision must be reversed. These six affidavits, which were the only evidence submitted in support of Guardalabene's objections, clearly constituted hearsay evidence. Although certain evidentiary rules may be relaxed in administrative hearings, the rule against hearsay is a fundamental rather than a technical rule. (*Saal v. County of Carroll* (1989), 181 Ill. App. 3d 327, 338.) In *Saal*, we held that when the only evidence presented to a county board regarding a certain charge against plaintiff was hearsay the charge should have been rejected by the Board. *Saal*, 181 Ill. App. 3d at 338.

In the case at bar, unlike *Saal*, plaintiff failed to object to the proffered hearsay evidence. Hearsay evidence which is admitted without objection may be considered and given its natural probative value. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 508.) Because these affidavits were controverted by those submitted on plaintiff's behalf, however, their value is minimal.

The purpose of allowing judicial review of election board decisions is to provide a remedy for arbitrary decisions. (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 538.) A decision based solely upon controverted affidavits could be nothing but arbitrary, unlike a decision based upon conflicting witness testimony where there is an opportunity to determine which witnesses are more credible by observing their demeanors. There was no reasonable basis to support a conclusion that the objector's affidavits were more credible than those submitted on plaintiff's behalf. Furthermore, Geraldine's affidavit and the other affidavits submitted by plaintiff contain specific factual statements establishing that she was present when each voter signed plaintiff's petition. The objector's affidavits only make the conclusional statement that the affiant did not sign the petition in Geraldine's presence. Conclusional matter in affidavits is generally inadmissible. See *Milwaukee Cheese Co. v. Cornerstone Inn, Inc.* (1986), 142 Ill. App. 3d 840, 843.

Access to a position on the ballot is a substantial right which should not be lightly denied. (*Welch v. Johnson* (1992), 147 Ill. 2d 40, 47.) Therefore, even if the Board did rely upon the controverted, con-

clusional affidavits submitted by the objector, its decision cannot stand.

■■ The Board has moved to dismiss this appeal because of the expense and other difficulties that would result from adding plaintiff's name to the ballot. We will not deny plaintiff a substantial right because the Board's own erroneous decision will necessitate the reprinting of ballots. The motion is denied.

In light of our ruling it is not necessary to consider the other issues raised by plaintiff. For the reasons expressed herein, the Board's decision and the order of the circuit court of Du Page County upholding it are reversed. Pursuant to our authority under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we order the Board to place plaintiff's name on the March 17, 1992, primary ballot for the office which he seeks. Our mandate shall issue immediately upon the filing of this opinion.

Reversed.

GEIGER, J., concurs.

JUSTICE WOODWARD, dissenting:

I respectfully dissent. The primary issue before us is whether the Board's decision was against the manifest weight of the evidence. On administrative review, the findings and decision of the Board will not be overturned unless they are against the manifest weight of the evidence. *Huskey v. Municipal Officers Electoral Board* (1987), 156 Ill. App. 3d 201.

The documentary evidence submitted to the Board was as follows. Plaintiff filed six nominating petitions which contained 75 signatures. Each petition was signed by Geraldine Moscardini as circulator of same. At the hearing before the Board, Ms. Moscardini submitted a sworn affidavit which averred that, because she has a degenerative bone disease which makes stair climbing difficult, she enlisted the help of others to circulate plaintiff's nominating petition. A number of affidavits confirmed the substance of Ms. Moscardini's affidavit. Plaintiff also submitted the affidavit of Joyce Krempasky, which stated that she was accompanied by Ms. Moscardini because of Ms. Krempasky's eye condition (macular degeneration). Due to this condition, she could not see exactly what the signers were writing on the subject petitions. Ms. Krempasky's affidavit further averred that Ms. Moscardini watched the signers affix their signatures from a distance of 15 to 20 feet.

Defense counsel conceded that Ms. Krempasky carried the clipboard on which the subject petitions were signed. She went to the signers' front doors. Upon the signature being affixed to the petition, she carried the clipboard back to Ms. Moscardini and handed it to her.

Defendant's evidence consisted of six affidavits, several of which were signed by two people who lived at the same address. These affidavits, each of which related to a separate petition sheet, alleged that the affiants had not signed plaintiff's nominating petition in the presence of Ms. Moscardini.

From the evidence in this record, which is admittedly spare, the Board was entitled to find that Ms. Moscardini was not in the presence of the signers at the time their signatures were affixed to the petition; therefore, the petitions signed by her as circulator were not valid.

For these reasons, the Board's decision is not against the manifest weight of the evidence.